American Allsafe Company, Inc. v. Commissioner.
American Allsafe Co. v. Commissioner
Docket No. 36407.
United States Tax Court
1954 Tax Ct. Memo LEXIS 318; 13 T.C.M. (CCH) 95; T.C.M. (RIA) 54033; January 29, 1954
*318 Petitioner is a corporation engaged in the manufacture and sale of safety equipment. Its four corporate officers were its sole directors and, with their wives, its only stockholders. Under a management agreement, compensation paid its four officers was contingent upon net profits. The growth and success of the corporation were largely due to the efforts of two of its officers, who as co-managers had complete charge and supervision of its business. Held, on the facts, that a portion of the compensation paid petitioner's president during each of the taxable years involved, was excessive and not deductible under Section 23 (a) (1) (A) of the Internal Revenue Code, and that all other compensation paid its four officers was reasonable compensation for services actually rendered and was deductible. J. Clement Johnston, Esq., for the petitioner. John F. O'Toole, Esq., for the respondent. BRUCE Memorandum *319 Findings of Fact and Opinion BRUCE, Judge: This proceeding involves excess profits tax deficiencies for the years 1942, 1943, and 1944, in the amounts of $8,962.92, $17,705.18, and $13,966.83, respectively. One of the issues presented in the petition involving the method of computation and amount of excess profits credit was eliminated by a stipulation of the parties as to the correct amount of excess profits credit for each of the taxable years. However, a recomputation under Rule 50 will be necessary. The only remaining issue for decision is whether the amounts paid to petitioner's officials in the years in question represented reasonable compensation for services actually rendered which would be deductible as an ordinary and necessary business expense under section 23 (a) of the Internal Revenue Code. Findings of Fact Petitioner, American Allsafe Company, Inc., is a New York corporation with its principal office in Buffalo, N. Y. Its corporation income and declared value excess profits tax returns for the *320 taxable years involved were filed with the collector for the 28th district of New York. American Allsafe Company, Inc., was incorporated in 1926 and has been engaged at all times in the business of selling industrial safety and fire protection equipment. Some of the equipment is manufactured by the corporation but most of the products sold are manufactured by others. For the latter the corporation acts as distributor, sales agent, manufacturer's agent, or the like. The business was started by Joseph Silbert and Willard F. Sterne to service local industries in and around Buffalo. Prior to that time Sterne had been employed by the American Radiator Company as safety director and fire prevention engineer at a salary of $6,000 per year. In that position Sterne had become familiar with the market for industrial safety equipment. The field was new and Sterne and Silbert hoped to capitalize upon an ever increasing demand. Soon after American Allsafe was formed it was apparent that more capital was needed. Ernest H. Holzworth was induced to purchase stock in the company and became its president. Sterne served as vice-president and Silbert as treasurer. In 1931 Norman J. Taylor joined the *321 organization as sales manager and secretary of the corporation. Previously he had been employed by the Buffalo Sintering Company as general foreman in charge of operations at a salary of $300 per month, plus bonuses. By 1929 sales had picked up to a point where the company showed considerable promise. With the depression, however, sales dropped to about one-third of the 1929 level. Ernest and Charles Holzworth, who together owned a majority of the capital stock at that time, decided to liquidate the corporation. Sterne and Taylor, however, persuaded them to continue operations by agreeing to work full time for the corporation as co-managers in return for salaries wholly contingent upon profits. [1] On August 27, 1935, a new management agreement was entered into between the corporation and Sterne and Taylor, the pertinent provisions of which are as follows: "1. The Employer hereby employs the Managers to manage the business of the Employer for a period of five (5) years beginning as of July 1st, 1935 and ending July 1st, 1940, during which period the managers under and subject to the Board of Directors shall have complete charge and supervision of the business of the Employer including *322 the production, manufacture, purchase, sale and distribution of all products either produced or manufactured by the Employer or purchased, sold and distributed by the Employer. "2. The Managers agree that during the term of this agreement they will devote all of their time and energies to the management and supervision of the affairs of the Employer. "3. The Employer agrees to pay to the Managers as compensation for their services hereunder the percentage of the net profits of the Employer as hereinafter set forth plus all sales and traveling expenses as hereinafter stated. "The total compensation of the Managers shall be computed as follows: "FIRST: From the gross profits of the American Allsafe Co., Inc., all expenses shall be deducted which shall include, without limiting the generality of the term; (a) Car expenses for *323 Messrs. Sterne and Taylor, when traveling, in making sales calls at $25.00 each per month, plus 4" per mile each, for actual miles traveled between towns when making out of town calls. "(b) Meals out of town, up to an amount not exceeding $2.00 per day, each, and hotel and garage together not to exceed $3.50 per day for each man. "(c) And any other necessary sales expenses incurred. If during the term of this contract the prevailing prices of lodgings, food, gasoline and automobile upkeep shall increase or decrease then the items of expenses indicated above as (a) and (b) shall be adjusted accordingly. "SECOND: After the deduction of all expenses referred to in item FIRST there shall then be deducted from the net profits remaining in each six months period the Two Hundred and Twenty Five Dollars ($225.00) monthly to Sterne; and Two Hundred and Twenty Five Dollars ($225.00) monthly to Taylor, and ($40.00) Forty Dollars monthly to E. H. Holzworth, or his representative and ($100.00) One Hundred Dollars monthly for the surplus account of American Allsafe Co., Inc. These deductions are to be made in the order named. "THIRD: After deduction of expenses and other charges referred *324 to in item First and Second above, and then remaining net profits shall be divided; ten per cent (10%) to Ernest H. Holzworth or his designated representative, forty five per cent (45%) to American Allsafe Co., Inc., and Forty Five per cent (45%) thereof to the Managers (to be divided in equal shares and paid to them equally) provided, however, that if at the end of any six (6) months' period the net profits remaining after deduction of expenses referred to in item 'First' do not exceed Twenty Nine Hundred and Forty Dollars ($2940.00) then the provisions of item 'Second' shall be inoperative and of no force and effect for such six months' period and then the entire total of such net profits for such six months' period shall be divided on the following basis, forty six per cent (46%) thereof to W. F. Sterne, forty six per cent (46%) thereof to Norman J. Taylor and the remaining eight per cent (8%) thereof to Ernest H. Holzworth or his said representative." In 1936 Charles Holzworth acquired all of the stock of the corporation owned by his brother Ernest. He thereby became the owner of 64.44% of the common stock and 68% of the preferred. At that time both Sterne and Taylor were dissatisfied *325 with the compensation they were receiving inasmuch as their average salaries were around $4,000 each per year. They had received offers from other companies of from two to three times that amount. The continued existence of the corporation depended to a large extent upon the ability, experience and good-will created by these two men. Under their guidance sales were steadily increasing, new products were being developed, and the business of the corporation was becoming a prosperous one. In order to protect his investment Holzworth considered it necessary for the corporation to retain Sterne and Taylor as co-managers. To insure this result Holzworth took two steps. First he donated 21 shares of his common stock to Sterne and 31 shares to Taylor, thereby reducing his own common stock to 64 shares. Sterne and Taylor had previously owned 15 shares and 5 shares respectively, and Silbert owned 36 shares. As a result of such donations and transfers Sterne, Taylor, and Silbert each owned 36 shares of the outstanding common stock of the corporation and Charles R. Holzworth owned 64 shares. One share was then owned by Mrs. Sterne and 7 shares by others. The latter 8 shares were later retired *326 by the company and in 1941 Silbert, Sterne, Taylor, and Holzworth each purchased 35 additional shares, thereby increasing the holdings of Charles R. Holzworth to 99 shares and the holdings of each of the other three to 71 shares. These were the common stock holdings during the taxable years involved. The second step taken by Holzworth was to cause the corporation to enter into a new management agreement with Sterne and Taylor on June 1, 1938. This agreement was substantially identical with the previous agreement except that the name of Charles R. Holzworth was substituted in the place of Ernest H. Holzworth and a fourth step was added to paragraph 3 as follows: "FOURTH: After items First, Second and Third are completely satisfied and after an ample amount has been designated as surplus by the Board of Directors of the American Allsafe Company, Inc., the then remaining earnings of the company shall be paid as salaries to the four officers of the company as compensation for services rendered. "Such salaries shall be apportioned from these remaining earnings on the basis of twenty five (25) per cent to the President, twenty five (25) per cent to the Vice President, twenty five (25) *327 per cent to the Secretary and twenty five (25) per cent to the Treasurer." During the years in question, pursuant to paragraph 3 of the above agreement, the following amounts were paid as compensation to the officers of the corporation or were designated surplus: Corporation
C. Holzworth
W. F. Sterne
N. J. Taylor
J. Silbert
surplus
President
V. President
Secretary
Treasurer
1942
Step 2
$ 1,200.00
$ 480.00
$ 2,700.00
$ 2,700.00
Step 3
5,573.65
12,540.72
12,540.72
Step 4
10,203.15
3,226.57
3,369.92
3,369.92
$4,911.89
Total
$11,403.15
$ 9,280.22
$18,610.64
$18,610.64
$4,911.89
1943
Step 2
$ 1,200.00
$ 480.00
$ 2,700.00
$ 2,700.00
Step 3
8,515.36
19,159.57
19,159.57
Step 4
17,782.84
4,383.68
5,384.99
5,384.99
$5,382.64
Total
$18,982.84
$13,379.04
$27,244.56
$27,244.56
$5,382.64
1944
Step 2
$ 1,200.00
$ 480.00
$ 2,700.00
$ 2,700.00
Step 3
7,829.13
17,615.55
17,615.55
Step 4
17,100.00
3,551.52
4,589.03
4,589.03
$5,401.53
Total
$18,300.00
$11,860.65
$24,904.58
$24,904.58
$5,401.53
Under step 4 of paragraph 3 of the 1938 agreement 25 per cent of the profits remaining "after *328 an ample amount has been designated as surplus by the Board of Directors" was to be distributed as salaries to each of the four officers. In 1942, 1943, and 1944 this amount was not distributed upon the basis of 25 per cent to each, but in the following manner: Percentage of
stated value
Percentage of salary recieved
Percentage of
of outstanding
under step 4
outstanding
common and
to total salaries paid
common
preferred
under step 4
stock held
stock held *
1942
1943
1944
C. Holzworth
21.68
21.35
19.39
31.75
36.66
W. F. Sterne
22.65
26.22
25.31
22.75
21.48
N. J. Taylor
22.65
26.22
25.31
22.75
21.48
J. Silbert
33.02
26.21
29.79
22.75
20.38
Gross sales of the corporation began increasing substantially in 1936. By the 1940's the corporation had become an extremely profitable business. In 1942, 1943, and 1944, gross sales totaled $630,870.69, $956,427.91, and $801,442.54, respectively. In 1951 gross sales exceeded $1,000,000. Net profits after *329 the payment of salaries represented 18.4 per cent, 29.3 per cent and 24.9 per cent of accumulated net worth for the years 1942, 1943, and 1944, respectively. The increased business of the corporation was largely due to the effort, experience and ability of its co-managers, Sterne and Taylor. They had developed business by inaugurating a plan of surveying an industry in order to ascertain its needs. After the survey recommendations were made with the view to making sales. Where standard safety devices did not meet the needs of a particular industry, new devices were developed and engineered by Sterne and Taylor. As sales were based to a large extent upon the recommendations and the inventive skill of the corporation's co-managers, their reputation was an important income producing factor. Sterne was recognized as the top safety engineer in the area, and Taylor was also highly regarded. Also, their long experience in a relatively new field made them particularly valuable as managers. Sterne, assisted by Taylor, invented and developed a number of patented safety devices which were manufactured by American Allsafe. From one of these devices the corporation realized in 1942 alone a *330 gross profit of around $30,000. Neither Sterne nor Taylor received additional compensation for inventing these devices. During the taxable years involved, in addition to their other duties, Sterne and Taylor contacted the larger accounts of the corporation in the capacity of salesmen. Their efforts to secure materials, which had become scarce due to the war, also increased their duties substantially during those years. Mr. Charles Holzworth has been the president of American Allsafe since 1935. For a number of months, beginning in 1935, he devoted about half of his time to the business of the corporation, but in 1936 he became the vice-president and manager of the Tonawanda Iron Company at a salary of $9,000 a year. Since 1936 he has devoted most of his time to the business of Tonawanda Iron Company, of which he is now president, and to "other jobs." He has, however, guided the policies of American Allsafe, called and attended all directors meetings, attended sales meetings each Saturday morning, advised and consulted with Sterne and Taylor on engineering problems, and assisted in making sales through his business connections. He has also personally contacted some customers. As *331 a very competent engineer and able businessman his counsel and advice were valuable to the corporation. He was unable to estimate, however, the amount of time that he devoted to the business of American Allsafe. During the years in question Holzworth, Sterne, Taylor and Silbert were the only directors of the corporation, and as such, they were the sole judges of the amounts designated as surplus under step 4 of paragraph 3 of the 1938 agreement. They have not received any fees or other compensation as directors. No common stock dividends have been declared or paid and the record does not disclose the payment of any preferred stock dividends, all profits having been used by the corporation to build up its inventories. The net worth of the corporation has steadily increased from $19,362.49 in 1939 to $140,870.18 in 1951. During the taxable years 1942, 1943, and 1944, the net worth was $62,003.20, $64,785.56, and $73,403.38, respectively. Book value of the common stock has increased from about $20 to approximately $600 per share. In determining the net income of the petitioner for the years 1942, 1943, and 1944, the Commissioner determined that reasonable compensation for the services *332 rendered by petitioner's four officers was $41,446.98 for the year 1942, $58,097.14 for the year 1943, and $54,341.76 for the year 1944, and disallowed deductions of $9,966.41, $15,153.66, and $12,729.57, respectively. The sums allowed represent the amounts paid to Holzworth, Sterne, and Taylor under steps 2 and 3 and to Silbert under step 4 of paragraph 3 of the 1938 agreement, as follows: 1942
1943
1944
Holzworth
$ 6,053.65
$ 8,995.36
$ 8,309.13
Sterne
15,240.72
21,859.57
20,315.55
Taylor
15,240.72
21,859.57
20,315.55
Silbert
4,911.89
5,382.64
5,401.53
Total
$41,446.98
$58,097.14
$54,341.76
The sums disallowed represent the amounts paid to Holzworth, Sterne, and Taylor as additional compensation under step 4 of paragraph 3 of the 1938 agreement as follows: 1942
1943
1944
Holzworth
$3,226.57
$ 4,383.68
$ 3,551.52
Sterne
3,369.92
5,384.99
4,589.03
Taylor
3,369.92
5,384.99
4,589.02
Total
$9,966.41
$15,153.66
$12,729.57
The amounts paid Mr. Silbert, the treasurer, under step 4 of paragraph 3 of the 1938 agreement were the only compensation received by him from the corporation during 1942, 1943, *333 and 1944. Respondent concedes that these amounts were reasonable compensation for the personal services he actually rendered the corporation. The entire amounts paid Sterne, Taylor, and Silbert respectively during the taxable years represented reasonable compensation for services actually rendered. The amounts paid Charles Holzworth during each of the taxable years in excess of the amounts allowed by the Commissioner did not represent reasonable compensation for services actually rendered. Opinion Petitioner paid its four officers salaries totaling $51,413.39 in 1942, $73,250.80 in 1943, and $67,071.33 in 1944. In determining the net income of the petitioner for such years the Commissioner determined that reasonable compensation for the services rendered by petitioner's four officers was $41,446.98 for the year 1942, $58,097.14 for the year 1943, and $54,341.76 for the year 1944, and disallowed deductions of $9,966.41, $15,153.66, and $12,729.57, respectively. Petitioner alleged that the Commissioner erred in disallowing said deductions. The principal question for determination, therefore, is whether the amounts paid by the petitioner to its four officers during the taxable years *334 involved represent reasonable compensation for services actually rendered which is deductible as an ordinary and necessary business expense under section 23(a)(1)(A) of the Internal Revenue Code. Preliminarily, we dispose of petitioner's contentions it is entitled to judgment as a matter of law. First, petitioner contends it is entitled to judgment as a matter of law because the Commissioner disallowed as a lump sum part of the compensation paid to petitioner's officers without determining which of the officers' salaries were excessive and in what amount. Miller Mfg. Co., Inc. v. Commissioner, 149 Fed. (2d) 421, relied upon by petitioner, does not support this contention. There, although agreeing that the proper procedure is for the Commissioner to determine definitely what is reasonable compensation for each officer rather than in an aggregate lump sum, the Fourth Circuit Court of Appeals nevertheless held that a lump sum determination does not invalidate the determination of deficiency, rob the Commissioner's finding of its presumption of correctness, or relieve petitioner of the burden of proof. Cf. D. & N. Auto Parts Company, 8 T.C. 1192. *335 Furthermore, it is evident from exhibits filed by petitioner at the hearing and from statements on brief that, prior to the hearing in this case, petitioner was fully cognizant of the manner in which the salary adjustments were made. The Commissioner's failure to follow the proper procedure was therefore not prejudicial. Petitioner also contends it is entitled to judgment as a matter of law because respondent did not offer any testimony contradicting or impeaching the testimony of petitioner's witnesses. We do not agree. Petitioner has the burden of overcoming the presumption of correctness which attaches to the Commissioner's determination. Miller Mfg. Co. Inc. v. Commissioner, supra.Whether it has successfuly done so is to be determined primarily from the strength of its own case and not from any weakness of respondent's. While opinion evidence such as that adduced from petitioner's witnesses is competent and sometimes helpful, it is not binding on the court which must arrive at its own conclusion based upon all the facts in the case, including those upon which the opinion evidence was based. Am-Plus Storage Battery Co. v. Commissioner, 35 Fed. (2d) 167, 169. *336 As stated in H. Levine & Bros., Inc., 101 Fed. (2d) 391, 393: "It is quite true that the officers testified that their salaries as allowed by themselves as directors were reasonable, and it is conceded that the government used no expert witness to categorically deny these statements. However, this was not necessary, because there were other facts as shown above which the Board was warranted in considering as inconsistent with the officers' statement in this respect. In this event the Board had the right to believe that which it deemed more worthy of credit, and disregard that which could not be reasonably reconciled therewith." See also Kerrigan Iron Works, Inc., 17 T.C. 566, 574. We come then to the principal question. Only so much of the compensation paid to Holzworth, Sterne, and Taylor as was paid under the fourth step of paragraph three of the 1938 agreement has been questioned by the Commissioner. The reasonableness of the amount paid Silbert thereunder, being the only compensation received by him, is conceded by the Commissioner, and, the reasonableness of all other compensation paid Holzworth, Sterne, and Taylor under the other steps of the *337 contract is not in dispute. Section 23(a)(1)(A) of the Internal Revenue Code provides that in computing net income there shall be allowed as deductions "All the ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business, including a reasonable allowance for salaries or other compensation for personal services actually rendered; * * *" Numerous basic factors to be considered in determining the reasonableness of compensation paid have been enumerated by the Courts, including the employee's qualifications; the value, extent and scope of the employee's work; the size and complexities of the business; comparison of salaries paid with gross income and net income, and also with distribution to stockholders 13 B.T.A. 154; Mayson Mfg. Co. v. Commissioner, 178 Fed. (2d) 115. In section 29.23(a)-6 of respondent's Regulations 111, it is stated: "* * * The test of deductibility in the case of compensation payments is whether they are reasonable and are in fact payments purely for services. This test and its practical application may be further stated and illustrated as follows: "(1) Any amount *338 paid in the form of compensation, but not in fact as the purchase price of services, is not deductible. (a) An ostensible salary paid by a corporation may be a distribution of a dividend on stock. This is likely to occur in the case of a corporation having few shareholders, practically all of whom draw salaries. If in such a case the salaries are in excess of those ordinarily paid for similar services, and the excessive payments correspond or bear a close relationship to the stock holdings of the officers or employees, it would seem likely that the salaries are not paid wholly for services rendered, but that the excessive payments are a distribution of earnings upon the stock. * * * "(2) The form or method of fixing compensation is not decisive as to deductibility. While any form of contingent compensation invites scrutiny as a possible distribution of earnings of the enterprise, it does not follow that payments on a contingent basis are to be treated fundamentally on any basis different from that applying to compensation at a flat rate. Generally speaking, if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services *339 are rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid. "(3) In any event the allowance for the compensation paid may not exceed what is reasonable under all the circumstances. It is in general just to assume that reasonable and true compensation is only such amount as would ordinarily be paid for like services by like enterprises under like circumstances. The circumstances to be taken into consideration are those existing at the date when the contract for services was made, not those existing at the date when the contract is questioned." However, as pointed out by the Fourth Circuit Court of Appeals in Miller Mfg. Co. v. Commissioner, supra: "It is well settled that the question of what constitutes, for the tax deduction here in issue, reasonable compensation to a specific officer of a corporation, is essentially a question of fact, to be determined by the peculiar facts and circumstances *340 in each particular case. * * * These facts and circumstances vary so widely that each corporate tub must more or less stand upon its own bottom. * * * "A determination by the Commissioner of a reasonable allowance for compensation, in a specific case, carries a clear presumption of correctness and places upon the taxpayer the burden of proving that it is entitled to a deduction larger than that determined by the Commissioner. * * *" Where, as here, the officers receiving the compensation in question, are also the sole stockholders and directors of the corporation, the evidence is to be scrutinized carefully to determine whether the socalled compensation is not in reality a distribution of profits. This is more especially true where the amount of the compensation being questioned is determined by such officers after the services have been rendered. T. P. Taylor & Co. v. Glenn, 62 Fed. Supp. 495. Such circumstances, however, do not necessarily prevent the payment from being reasonable compensation for services. T. P. Taylor & Co. v. Glenn, supra.Whether distributions made to corporate officers, who are also its sole stockholders and directors, represent *341 compensation for services, or dividends depends largely upon whether such distributions were made upon the basis of services actually rendered, or upon the basis of stockholdings. Long Island Drug Co., Inc., 35 B.T.A. 328, affd. 111 Fed. (2d) 593, cert. denied 311 U.S. 680. We have carefully considered all the facts presented herein and have reached the conclusion that the payments involved herein which were made to Sterne and Taylor were made upon the basis of services actually rendered. The compensation received by Sterne and Taylor during the years in question was greater than they had received in former years. However, under the circumstances here present it was reasonable. In the early years of the corporation earnings were small but, because they had faith in the future of the business and in their ability to build it up, Sterne and Taylor agreed to devote their full time to the corporation as co-managers at compensation wholly contingent upon profits. This arrangement was arrived at at arms length, long prior to the years involved herein and was based upon sound business principles. It served to stimulate the activity, diligence and *342 ambition of Sterne and Taylor. At the same time it enabled the corporation to justly compensate them without beforehand incurring the obligation. As a result the business of the petitioner has been developed from a small beginning to a prosperous business having large gross sales and substantial profits, and which has acquired and maintained substantial inventories. Sterne and Taylor have largely been responsible for this success. They have obtained customers, built up petitioner's reputation and good will and developed demand for petitioner's products. They have invented, developed and patented several devices utilized by petitioner without cost, from the manufacture and sale of which petitioner has realized substantial profits. Their activities and duties have increased with the business. Generally speaking, it is the amount of the compensation for which a deduction is claimed which must be shown to be reasonable, and not the arithmetical formula upon which the amount of the compensation was computed. However, as recognized by respondent in his regulations, "if contingent compensation is paid pursuant to a free bargain between the employer and the individual made before the services *343 were rendered, not influenced by any consideration on the part of the employer other than that of securing on fair and advantageous terms the services of the individual, it should be allowed as a deduction even though in the actual working out of the contract it may prove to be greater than the amount which would ordinarily be paid." Reg. 111, section 29.23(a)-6. While these regulations, considered in their entirety, do not establish any hard and fast rule that a contingent contract, fair and equitable when made, becomes permanently immune from scrutiny regardless of how radically conditions may have changed ( Hoffman Radio Corp. v. Commissioner, 177 Fed. (2d) 264, our examination of the circumstances which existed when the management contracts herein were executed as well as those which prevailed during the taxable years convinces us that the deduction of the full compensation paid Sterne and Taylor during the taxable years involved is justified. Cf. T. P. Taylor & Co. v. Glenn, supra; Gray & Co. v. United States, 35 Fed. (2d) 968; Draper & Co., Inc., 5 T.C. 822. In arriving at our conclusion we have not been unmindful of the *344 fact that petitioner has paid no dividends upon its common stock, nor, so far as the record herein discloses, upon its preferred stock. Cf. Marble & Shattuck Chair Co. v. Commissioner, 39 Fed. (2d) 393; Long Island Drug Co., Inc., supra. It does not appear, however, that this has resulted from the payment of the compensation involved herein but from the policy of the petitioner to build up and convert its surplus into inventories. As noted in our findings, even after payment of all the salaries, including the questioned amounts, petitioner had substantial profits in the year involved. That the questioned amounts did not represent payment of dividends or distributions of profits in the guise of compensation for services is also evident from the fact that the distribution of such amounts was not in proportion to the stockholdings. Holzworth, who was the largest stockholder, received the smallest percentage of the distribution made under step 4 of the contract. The percentages received by Sterne and Taylor were greater than the percentages of their stockholdings. Whereas Silbert, who was the smallest stockholder, received the largest percentage of such distributions. *345 In Roth Office Equipment Co. v. Gallagher, 172 Fed. (2d) 452, where there was a somewhat similar relationship between the sizes of the bonuses paid three of the taxpayer's officers and their stockholdings, the Court of Appeals pointed out: "Nor is it shown that the bonuses received bore any direct relation to stock ownership so as to result in a payment of a dividend through the guise of compensation for personal services." A different situation exists, however, with respect to the amounts paid to Charles Holzworth. While, as president, he has maintained a close relationship to the business of the American Allsafe Company, has called and presided at all directors' meetings and also attended sales meetings every Saturday morning, he himself was unable to estimate how much time he spent on the affairs of petitioner. Most of his time was admittedly spent in connection with other business interests, including the Tonawanda Iron Company, of which he has been vice-president and manager, or president, since 1936. Although, as a competent engineer and able business man, his counsel and advice were undoubtedly valuable to the corporation and might merit higher compensation *346 than a fulltime president who lacked such qualifications ( Miller Mfg. Co., Inc., v. Commissioner, supra), it is to be noted that, under the management agreement in effect during the taxable years, Sterne and Taylor, not Holzworth, had complete charge and supervision of the corporation's business. Petitioner's expert witness, an economist and business consultant and a professor of economics at Buffalo University, though unqualifiedly expressing the opinion that the total compensation paid Sterne and Taylor during the taxable years was reasonable, would only say that the compensation paid Holzworth was probably reasonable. The record does not disclose how much compensation for services Holzworth received from his other business interests during the taxable years. When he first became vice-president and manager of Tonawanda in 1936 he was paid a salary of $9,000 per year. The record does not disclose to what extent, if any, this was ever changed. Compared to such salary, particularly in the light of the small amount of time spent by him in the affairs of the petitioner it is evident that the total payments made to Holzworth by petitioner in the taxable years, to wit, *347 $9,280.22 in 1942, $13,379.04 in 1943, and $11,860.65 in 1944, were excessive. We have accordingly concluded that only $6,053.65 of the total amount paid to Charles Holzworth by petitioner in the year 1942, $8,995.36 of the total paid to him in 1943, and $8,309.13 of the total paid to him in 1944, represent reasonable compensation for services actually rendered.
Accordingly we hold that the total payments made by petitioner to Sterne, Taylor and Silbert by way of compensation for services in the taxable years involved are deductible under section 23(a)(1)(A) of the Internal Revenue Code, and that $3,226.57 of the amount paid Charles Holzworth in 1942, $4,383.68 of the amount paid to him in 1943, and $3,551.52 of the amount paid to him in 1944 are not deductible under section 23(a)(1)(A) of the Internal Revenue Code. Decision will be entered under Rule 50. Footnotes
1. A carbon copy of an agreement dated July 22, 1933 offered in evidence by petitioner was rejected because not clearly shown to have been executed by Ernest Holzworth, then president and principal stockholder. However, since it was succeeded by later written agreements which are in evidence, the exact terms of the earlier agreement are immaterial.↩
*. For the purpose of computation preferred stock held by the wife of an officer is treated as though it were owned by her husband.↩